Com. of Pa. ex rel. *v.* Hirst, Appellant.

Argued March 14, 1934.

Before Trexler, P. J., Keller, Cunning-
ham, Baldrige, Stadtfeld, Parker and James, JJ.

*Thomas J. Mullaney,* for appellant.

*Harold N. Bornemann,* and with him *William A.
Gray,* for appellee.

Opinion by Baldrige, J., April 23, 1934:

This appeal is from an order of support made Janu-
ary 25, 1934, by the municipal court of Philadelphia

against the appellant, in favor of his wife, in the sum of $40 per week.

The parties were married September 24, 1925, and lived together until November 14, 1933, when they separated; they have no children. The respondent has been a member of the Philadelphia Bar for a period of ten years, but his professional income, for the last two years at least, has been insufficient to meet his office expenses. He owns a house on Morris Park Road, where he lives, for which he paid $12,800, against which there is a mortgage held by his father's estate in the sum of $12,500; also a house in Haverford, which he purchased for $32,500, upon which there is a mortgage of $75,000, in favor of his father's estate. From this property he receives a rental of $76 per month. He owns another house on Brewster Avenue, Philadelphia, which he rents for $10 a month, and a farm in Concordville, which he rents for $25 a month, but upon which he collected only $20 during the past year. He testified that he and another man had purchased a piece of real estate in Wildwood, N. J., from which he never received any rent; that he paid as his share $40,000, which he borrowed from his father's estate. Later, in referring to this property, he said: "I believe it is bankrupt now—dissolved." This terse and uncertain statement gave no satisfactory information of the portion the respondent owned, whether any equity remains in him, etc. In addition to the real estate, he owns a motor boat, for which he paid $2,500, and an automobile. The respondent's mother gave him the sum of $250 a month for a period of three years. A week before the hearing in the court below, she notified him that she would not continue making these contributions. In a statement of his gross receipts, submitted to the court below, there appears a further sum of $97 received monthly from his mother. In a letter to him she stated that she was

sending $97 "to pay for my mortgages." No explanation is given for her paying those sums to him, nor is any other light thrown on those payments. According to respondent's tax report for 1932, his gross income from his father's estate and rents amounted to $7,889.80. Credits were taken for $8,888, interest, and $484, taxes, which left a deficit.

The respondent is a son of the late Anthony A. Hirst, who died in February, 1921, leaving an estate of approximately $550,000. By the terms of his father's will, $50,000 was left to respondent's mother, who is still living; a bequest of $1,000 per annum was made to one of the respondent's sisters; and the balance of the estate was left, in trust, one-half of the income thereof to be paid to respondent's mother for life, and the remaining one-half to be divided between respondent and his brother. The residuary estate is to be divided between the respondent and his brother at their mother's death. The respondent's share of the income from his father's estate for the year, 1932, which was credited to his indebtedness, amounted to $6,877.37. Mr. Berger, trust officer of the Bryn Mawr Trust Company, executor of the estate of Anthony A. Hirst, called by the relatrix, testified that respondent's income for 1933 would be approximately $5,000; that his indebtedness to the estate was $165,114; that the respondent executed an assignment to the trust company of his interest in the estate as collateral security for this loan. The assignment was not offered in evidence, nor were dates or other definite details given of its contents. The respondent seemed to be of the opinion that it was executed in 1929 or 1930. He testified that he owed $210,000 to his father's estate. The two mortgages, to which we have referred, amounted to $87,500, and respondent stated that he had borrowed, at other times, sums of $4,000, $4,500 and $7,500, aggregating $16,000. From these figures,

it would appear that he owed the estate, for these items, $103,500. He testified that he had borrowed also $60,000 from the estate. He refused to tell how he disposed of the latter sum, taking refuge under his constitutional right that if he did it would tend to incriminate him.

The relatrix inherited $20,000 from her mother, $17,000 of which she invested in a yacht, and lost the remaining $3,000 on the stock market. She was offered $11,000 for the yacht in 1932 but declined to sell, and she says that it is now not marketable. A refusal of that offer indicates that it has a substantial value. The only other assets she has are a few items of jewelry. She stated that she endeavored to borrow on the most valuable piece, on which she could have obtained but $100. The respondent contended that the jewelry has considerable value, but gave no definite evidence to support his contention.

In view of these facts, was an order of support of $40 a week reasonable?

The learned judge below in making his decree relied upon Com. ex rel. Berardino v. Berardino, 99 Pa. Superior Ct. 532, where an application was made to reduce an order of support entered January 31, 1929, on the ground that the respondent had no income, as he had lost $20,000 in October, 1929, in the decline of stocks. We held that his mere averment that he had no income, standing by itself, in view of the circumstances and conditions in that case, was insufficient to move a court to reduce the order. Com. ex rel. Williams v. Williams, 106 Pa. Superior Ct. 415, 162 A. 327, also cited by the judge, was an appeal from a refusal of the court to reduce an order of $150 for an invalid son. It appeared that the respondent was spending on his own living expenses between seven and eight thousand dollars a year, and had a gross income of $15,630. We held that he was required to adjust

his own living expenses to his income, keeping in mind his obligation to those depending upon him. Those cases are not similar in their facts to the case at bar.

One can not fail to be impressed with the respondent's imprudent dissipation of his patrimony. But this is not a punitive proceeding for extravagance. Criticism of his improvidence will not assist us in reaching a determination of his financial ability to support his wife, which must be our guide. We must determine the case on his financial ability to pay. The trial judge, no doubt, felt, as we do, that the respondent's explanation of at least some of the losses alleged to have been sustained was vague and unsatisfactory, and he evidently reached the conclusion that, notwithstanding the testimony, the respondent had financial resources at his command. Admittedly, he is the owner of a large amount of property, with heavy obligations, represented largely by money advanced by his father's estate. In view of the testimony, it would not be fair to conclude, as the court below apparently did, that he has a net income of approximately $6,000. We must bear in mind that it is his primary duty to support his wife, if possible, in keeping with his financial situation.

Our conclusion is, after giving careful consideration to the record, that, in view of the respondent's possessions and his ability to earn some money, the order of January 25, 1934, should be revised by reducing the payments from $40 to $30 per week; and it is now so decreed. Costs to be paid by appellant.